## CIRCUIT COURT OF FREDERICK COUNTY

Strosnider, Ex'x.

v.

Shelly

January 20, 1983

Case No. (Law) 3435

By JUDGE ROBERT K. WOLTZ

The executrix instituted suit against the defendant on a contract between her decedent and the defendant for the sale of a bulldozer with certain attachments, including a winch. She claims a balance of payments due by the defendant buyer on this purchase contract. The defendant defends on the ground that he never received the winch and further counterclaimed for what he said was the value of the winch. The parties are agreed as to the amount paid on the contract purchase price.

The defendant testified that when he agreed to purchase the bulldozer it had a winch attached but when he picked it up the winch had been removed to enable the decedent to make certain repairs to the bulldozer pursuant to an alleged oral agreement between the two, though the written contract of sale specifies, "Sold as is where is." He further testified that at the suggestion of the decedent he took possession of the bulldozer without the winch being reattached as he did not need it immediately and that the decedent promised to deliver the winch later; that afterward he saw the decedent and reminded him of the winch and the decedent said he had forgotten about it but would deliver it, that before doing so the decedent died and defendant had never gotten the winch. Defendant also testified that because of non-delivery of the winch

he made no interest payments on the contract after the decedent died and that no demand for any payment on the contract was made until suit instituted. On cross-examination he testified that he did not attend the decedent's estate sale of equipment and never made demand on the executrix for the winch.

The defendant had no other witness except an expert who testified concerning value of the winch. Motion by the plaintiff for summary judgment on the counterclaim because there was no corroboration of the counterclaimant's testimony as required by § 8.01-397, the "dead man's statute," was sustained. In rebuttal the executrix testified to writing a letter to the defendant prior to her sale as personal representative of the decedent's equipment, setting forth the amount due on the purchase but that she received no response from him. At the conclusion of all the evidence, the plaintiff moved for summary judgment, again based on the dead man's statute, for lack of corroboration of the defendant in his defense against the plaintiff executrix's claim, which motion was denied. The jury returned a verdict for the defendant. The plaintiff moves to set aside the verdict as contrary to the law and the evidence on the ground that the Court erred in not sustaining her motion for summary judgment and more specifically on the ground that the dead man's statute, § 8.01-397, requiring corroboration had not been met by the defendant.

Section 8.01-397 in pertinent part provides:

> In any action by or against. . . the. . . executor. . . or any other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony.[1]

---

[1] The statute, in further compensation of the party disabled from testifying for allowing the previously disqualified party to testify, also provides that, "[w]hether such adverse party testifies or not, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence in all proceedings including without limitation those to which a person under a disability is a party."

At common law parties to actions were not competent as witnesses. "All witnesses, that have the use of their reason, are to be received and examined, except such as are *infamous*, or such as are *interested* in the event of the cause. All others are *competent* witnesses." 3 Blackstone's *Commentaries* 370 (Facsimile ed. 1979). In Virginia certain statutory changes were made during the course of the years to alter the common law rule. Then the whole subject was radically changed by the revisers of the Code of 1919 with respect to the competency of witnesses. This was done by removing virtually all disqualifications of witnesses. M. Burks, "Address on the Code of 1919," 5 Va. L. Reg., N.S., 97, 125. The present statutory provision on the subject is § 8.01-396, very little changed from § 6208, Code 1919, as follows:

> No person shall be incompetent to testify because of interest, or because of his being a party to any civil action; but he shall, if otherwise competent to testify, and subject to the rules of evidence and practice applicable to other witnesses, be competent to give evidence in his own behalf and be competent and compellable to attend and give evidence on behalf of any other party to such action; but, in any case, the court, for good cause shown may require any such person to attend and testify ore tenus and, upon his failure to so attend and testify, may exclude his deposition.

Nevertheless, with virtually all disqualifications removed, save for example confidential communications between spouses, this meant that the party interested, such as a party to the action, was now qualified to testify in it even though his adversary might be dead or otherwise incapable of testifying. § 8.01-397 then was to compensate the person incapable of testifying for the fact that his adversary by statute was now no longer disqualified from testifying but to the contrary made competent to testify. *Seaboard Citizens National Bank* v. *Revere*, 209 Va. 684 (1969).

To escape the strictures of § 8.01-397, the defendant argues that his testimony was corroborated. No hard and

fast rule can be devised as to the degree of corroboration necessary to meet the requirement of the statute in that regard, *Brooks, Admr.* v. *Worthington*, 206 Va. 352 (1965), and each case must depend on its own facts and circumstances, *Id., Davies* v. *Silvey, Admx.*, 148 Va. 132 (1927), the statute being nonspecific on the point. Thus the corroboration may be afforded by the testimony of some other witness or any legal source, *Arwood* v. *Hill*, 135 Va. 235 (1923); it may be found in the circumstances of the case, *Brooks, supra*, and *Shenandoah Valley Nat'l. Bank, Admr.* v. *Lineburg*, 179 Va. 734 (1942). On close review of the evidence, I find no corroboration, testimonial, direct, circumstantial or otherwise, of the defendant's testimony. The defendant's other arguments deal with a claim that by returning a verdict for him the jury implicitly found corroboration, and that the plaintiff cannot complain of the verdict as she offered no instruction on corroboration. Overlooking the obvious conflict between these two stances, suffice it to say that if there were no corroboration then the controversy should never have been submitted to the jury in the first place.

While I had no difficulty in declaring that the defendant's counterclaim should be dismissed for failure of any corroboration of the defendant-counterclaimant's evidence in his effort to recover judgment against the decedent's estate, I was doubtful whether the same legal rule should apply with respect to the defendant's evidence seeking to block or defeat the plaintiff's claim against him. Being in somewhat of a state of equipoise on this latter point, I allowed the case to go to the jury on the plaintiff's claim.

Upon further legal investigation and more reflection, I am satisfied that the ruling was erroneous. In terms of § 8.01-397 this is an action by an executrix of a (deceased) person "incapable of testifying," in which situation "no judgment. . . shall be rendered in favor of an adverse . . . party founded on his uncorroborated testimony." The verdict of the jury having been "rendered in favor of the adverse party" against the representative of a party incapable of testifying, were the jury verdict to be sustained a judgment would have to enter thereon in favor of the adverse party "founded on his uncorroborated testimony." This the statute forbids. It seems certain had he

brought a motion for judgment against the plaintiff, the defendant on his uncorroborated testimony could not have obtained a favorable judgment against this plaintiff. The language and intent of the statute are too plain to admit such a result. The next logical extension, and one previously reached at the conclusion of the defendant's evidence, is that just as clearly the defendant by the terms of this statute cannot on his uncorroborated testimony obtain a judgment on his counterclaim against the plaintiff. The next extension is that the defendant could not under the circumstances obtain judgment based on a set-off against plaintiff's claim, and it has been held so in *Ratliff v. Jewell*, 153 Va. 315 (1929).

What the defendant has pled and that by which he has obtained favorable verdict is technically a recoupment, which existed at common law and in expanded form does by statute, *viz*, § 8.01-422 on pleading equitable defenses. For definitions of and distinctions between set-off and recoupment, see *Dexter-Portland Cement Co. v. Acme Supply Co.*, 147 Va. 758 (1926); and as to these and counterclaim see M. Burks, *Pleading and Practice*, §§ 241, 247-249 (4th ed. 1952). The next logical extension to effectuate the dead man's statute is from set-off to recoupment. Had the common law disqualifying parties to a suit from testifying never been changed the defendant would now be equally disqualified from testifying in support of his own motion for judgment or counterclaim or set-off or recoupment. Now by statute he may testify in any of the four situations. That being true it seems only logical and just that likewise the provision of the same statute disabling him from obtaining a favorable judgment on his uncorroborated testimony should apply in all four situations, recoupment no less than the other three.

If, as the Court found, the statute forbids a judgment in favor of the defendant based on his offensive pleading, that is, his counter-claim, because his testimony was uncorroborated, which principle seems plain enough, then in logic and in accord with the intent appearing from the statute, likewise he is prevented from the rendition of a favorable judgment in pursuance of his defensive pleadings and based on his uncorroborated testimony at the expense of the disadvantaged plaintiff whose decedent

is perforce incapable of testifying. The situations are obverse and reverse of the same statutorily minted coin.

Consequently the verdict of the jury is set aside and the plaintiff's claim being in contract undenied by the defendant for a liquidated amount, all of which has been proven by credible evidence, judgment will be rendered in favor of the plaintiff *non obstante verdicto*.